## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID SEITZ and MICROTHERM, INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-02-4782 |
| ENVIROTECH SYSTEMS WORLDWIDE INC., *et al*., | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER ON THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS TO PATENT NONINFRINGEMENT, INVALIDITY, AND LACK OF UNFAIR COMPETITION AND ON THE DEFENDANTS' MOTION TO EXCLUDE INFRINGEMENT ALLEGATIONS BASED ON PREVIOUSLY UNASSERTED PATENT CLAIMS

In 2002, David Seitz and Microtherm, Inc. (together, "Seitz") sued Envirotech Systems Worldwide, Inc. and Envirotech of Texas (together, "Envirotech"). Seitz alleged that the Envirotech ESI-2000 tankless water heater infringed four patents: U.S. Patent No. 5,886,880 (the '880 Patent), U.S. Patent No. 6,080,971 (the '971 Patent), U.S. Patent No. 5,216,743 (the '743 Patent), and U.S. Patent No. 6,246,831 (the '831 Patent). (Docket Entry No. 1). Seitz also alleged that Envirotech engaged in unfair competition through false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125. (*Id*.). This memorandum and order addresses the following motions:

- Envirotech has moved for summary judgment that, as a matter of law, the Envirotech ESI-2000 does not infringe any of the claims of the '743 and '831

Patents and does not infringe claims 2-9, 11-15, and 17 of the '971 and claims 2-9 and 11-20 of the '880 Patents; that all four of these patents are invalid because they are obvious in light of prior art; and that there is no Lanham Act violation.  (Docket Entry Nos. 109).  Seitz  responded, (Docket Entry No. 121), and Envirotech replied, (Docket Entry Nos. 128, 130).

- Envirotech also moved to exclude Seitz's infringement allegations based on dependent claims 2-9, 11-15, and 17 of the '971 Patent and dependent claims 2-9 and 11-20 of the '880 Patent.  (Docket Entry No. 122).  These claims were added in Seitz's proposed amended complaint and supplemental expert report filed in November 2006.  The proposed amended complaint also deleted the infringement claims based on the '743 and '831 Patents, consistent with a statement in Seitz's expert report stating that the record did not disclose evidence of infringement as to these two patents.  At a hearing held on February 28, 2007, this court granted Seitz's motion for leave to amend but did not rule on the motion to exclude the belatedly asserted infringement claims. Seitz has responded to the motion to exclude, (Docket Entry No. 127), and Envirotech replied.  (Docket Entry No. 129).

A careful review of the pleadings, the motions, responses, and replies, the expert reports and summary judgment evidence, and the applicable law leads this court to conclude that despite the age of this case, the present record is inadequate to permit proper consideration of most of the issues raised in the motions.  As explained in more detail below,

2

the expert reports are not competent summary judgment evidence.  The motions do not take into account the results of recent discovery.  The legal arguments on the issue of whether the two patents that remain in suit are invalid in light of prior art do not take into account the recently issued Supreme Court decision in *KSR International Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007).  As a result of these deficiencies, this court denies without prejudice Envirotech's motion for summary judgment as to noninfringement and invalidity.

The record is sufficient for this court to analyze Envirotech's motion to exclude the belatedly asserted claims that the dependent claims of the '880 and '971 Patents were infringed.  That motion is denied.  A new scheduling order is set, to allow the parties to supplement their expert reports and, if appropriate, file dispositive motions on infringement and validity, supported by competent evidence and briefs that fully address the legal issues.

The record is sufficient to rule on Envirotech's motion for summary judgment as to Seitz's Lanham Act claims.  That motion is granted.

The reasons for these rulings are set out below.

## I.    Background

The patents in this suit involve flow-through or "tankless" water heaters that use a control system to achieve rapid heating of water to a desired temperature as the water flows through the heater.  The flow-through heater has multiple heating elements operated by a control system that regulates the activation and deactivation of power.  The control system has temperature-sensing circuitry and "anticipation" circuitry that together control the

electrical power to the heating elements, to improve temperature control and to make instantaneously heated water available on demand.

In the 2002 original complaint, Seitz alleged that Envirotech's ESI-2000 tankless water heater infringed the following four patents:

- U.S. Patent No. 5,216,743 (the '743 Patent), titled "Thermo-Plastic Heat Exchanger," lists David Seitz as the inventor.  It was filed May 10, 1990 and issued June 1, 1993.

- U.S. Patent No. 5,886,880 (the '880 Patent), titled "Fluid Heater with Improved Heating Elements Controller," was invented by David Seitz and Donald Kuhnel and assigned to David Seitz.  It was filed May 22, 1997 and issued February 2, 1999.

- U.S. Patent No. 6,080,971 (the '971 Patent).  The '971 Patent, titled "Fluid Heater with Improved Heating Elements Controller," was invented by David Seitz and Donald Kuhnel and assigned to David Seitz.  It was filed February 1, 1999 and issued June 27, 2000.

- U.S. Patent No. 6,246,831 (the '831 Patent), titled "Fluid Heating Control System," was invented by David Seitz, David Paul Sharp, Thomas Lamson Harman, Louis J. Everett, and Rodney H. Neumann and assigned to David Seitz.  It was filed June 16, 1999 and issued June 12, 2001.

This case has been plagued by delays and difficulties.  Envirotech declared bankruptcy in 2004.  The bankruptcy was dismissed in 2005.  This court has found that

Envirotech used the bankruptcy process to avoid meeting its discovery obligations in this case. Envirotech has changed lawyers and law firms at least four times, leading to further delays and difficulties in conducting discovery and in ensuring that discovery obligations have been met.

In August 2006, the expert witness Seitz had designated, Louis J. Everett, Ph.D. and P.E., issued a written report. His report concluded that the Envirotech ESI-2000 and the Fortis device—which is still in the development stage—met the limitations of claims 1 and 10 of the '880 Patent and claims 1, 10, and 16 of the '971 Patent. (Docket Entry No. 110, Ex. 6). Everett concluded that the Envirotech devices infringed based on the pattern of heating element operations shown in the product software. (*Id*. at 8–10). Everett concluded that there was inadequate information to assess whether the devices met the limitations of the claims of the '743 or '831 Patents. (*Id*. at 2). Everett also concluded that none of the four patents was invalid as a result of prior art. (*Id*.).

The expert designated on behalf of Envirotech, Jerome K. Butler, Ph.D., also issued his report in August 2006. (Docket Entry No. 110, Ex. 8). Butler did not opine as to infringement. Instead, he opined that the '743, '880, '971, and '831 Patents were invalid in light of prior art, much of which was not cited to the Patent Office during the prosecutions. (*Id*. at 6–7). Butler repeated these opinions in a rebuttal expert report issued in September 2006. (Docket Entry No. 110, Ex. 7).

In September 2006, this court modified the scheduling order to require discovery completion by November 16, 2006. On November 15, 2006, Seitz submitted a "clarification"

report from Everett.  (Docket Entry No. 100, Ex. 14).  Everett repeated his earlier conclusions

that the ESI-2000 and Fortis heating devices infringed the independent claims—1 and 10—of

the '880 Patent and the independent claims—1, 10, and 16—of the '971 Patent.  Everett also

stated that the Envirotech devices "obviously" infringed dependent claims of the two patents,

specifically, claims 2, 3, 4, 6, 11, 12, 13, and 15 of the '880 Patent and claims 2, 3, 4, 6, 7, 11,

12, 13, 14, 15, and 17 of the '971 Patent.  Everett stated that he had "overlooked" independent

claim 19 in the '880 Patent and opined that the Envirotech devices met the limitations of that

claim, along with dependent claim 20.  (*Id*. at 3).

On November 17, 2006, Envirotech moved for summary judgment.  Envirotech argued

that there was no infringement of any of the claims of the '743 and the '831 Patents, pointing

to Everett's admission that he could not identify a basis to find infringement.  Envirotech also

argued that there was no infringement of the dependent claims of the '971 Patent (claims 2-9,

11-15, and 17) and of the '880 Patent (claims 2-9, 11-20), relying primarily on the absence

of any specific opinions as to these claims in the first Everett report.  Envirotech also moved

for rulings that all four patents were invalid, based on Butler's report, and that there was no

Lanham Act violation.

On November 17, 2006, Seitz moved for leave to file a first amended complaint.

(Docket Entry No. 111).   Seitz proposed to add individual and corporate entities as

defendants, alleging that they were responsible for the patent infringement and Lanham Act

claims because of their relationship to Envirotech.  The amended complaint dropped the

infringement claims based on the '743 and '831 Patents, asserting only infringement of the

6

'880 and '971 Patents.  The amended complaint did not specify which claims of those patents were infringed.  This court granted the motion for leave to amend in part, refusing to allow the addition of the individuals as defendants, but allowing the addition of the corporate entities—Valeo, Inc. and Skye International, Inc.—and allowing the deletion of the infringement claims based on the '743 and '831 Patents.  Seitz filed an amended complaint consistent with this ruling in March 2007.  (Docket Entry No. 136).  Envirotech answered the amended complaint.  (Docket Entry No. 140).  Envirotech moved for a ruling excluding any infringement claim based on the dependent claims (and the one independent claim) that were not asserted until Everett filed his "clarification" report in November 2006.  (Docket Entry No. 122).

## I.     The Summary-Judgment Evidence

The record includes the '880 Patent, the '971 Patent, the '743 Patent, and the '831 patent;[1]  the Everett expert report submitted on Seitz's behalf dated August 15, 2006[2] and the "clarifying" report dated November 15, 2006;[3] the Butler expert report submitted on Envirotech's behalf dated August 15, 2006 and a rebuttal report dated September 15, 2006;[4]

---

[1]Docket Entry No. 110, Exs. 2–5.

[2]Docket Entry No. 110, Ex. 6; Docket Entry No. 122, Ex. 3.

[3]Docket Entry No. 110, Ex. 14; Docket Entry No. 122, Ex. 5.

[4]Docket Entry No. 110, Exs. 7, 8; Docket Entry No. 122, Ex. 4.

a German patent, No. DE 3601 555 A1;[5] responses to interrogatories;[6] an affidavit of David Seitz[7] and excerpts from his deposition;[8] excerpts from the deposition of Gregg Johnson, an Envirotech officer,[9] and Envirotech technical and marketing documents produced during discovery.[10]

Seitz objected to Butler's expert report because he did not give a deposition and because the report was signed but not accompanied by an affidavit or otherwise sworn to. (Docket Entry No. 121 at 2).  The first objection, by itself, is unpersuasive.  As to the second objection, Rule 56(e) of the Federal Rules of Civil Procedure requires that to be competent summary-judgment evidence, an expert report must be sworn to or otherwise verified, usually by a deposition or affidavit.  *See, e.g.*, *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (suggesting that an expert report should not be excluded without giving the proponent an opportunity to obtain the expert's affidavit or otherwise verified); *Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003) (holding that an unsworn report introduced without any supporting affidavit was not admissible as summary-judgment evidence but that an appropriate affidavit verifying the unsworn report would have made it admissible); *Maytag*

---

[5]Docket Entry No. 110, Ex. 9.

[6]Docket Entry No. 110, Ex. 10; Docket Entry No. 122, Ex. 2.

[7]Docket Entry No. 121, Ex. A.

[8]Docket Entry No. 110, Ex. 15.

[9]Docket Entry No. 110, Ex. 11.

[10]Docket Entry No. 121, Ex. B; Docket Entry No. 128, Ex. 2; Docket Entry No. 128, Exs. 2–5, 6–7 (filed as Docket Entry No. 130).

*Corp. v. Electrolux Home Prods., Inc.*, 448 F. Supp. 2d 1034, 1065 (N.D. Iowa 2006) ("This court concludes that subsequent verification or reaffirmation of an unsworn expert's report, either by affidavit or deposition, allows the court to consider the unsworn expert's report on a motion for summary judgment."); *Feltner v. Partyka*, 945 F. Supp. 1188, 1191 (N.D. Ind. 1996) (same).

Envirotech submitted as summary-judgment evidence two signed but unsworn reports from Butler. Seitz objected. Under Federal Rule of Civil Procedure 56(e), the Butler reports are not competent summary-judgment evidence. However, other expert reports in this case, including the Everett original and "clarification" reports Seitz submitted, also appear to be unsworn. Although only Seitz objected, it would be improper to consider unsworn expert reports submitted by Seitz while striking reports with the same flaw submitted by Envirotech.

There are good reasons to allow the parties an opportunity to correct the expert-report problem raised by Seitz's objection. Since the experts wrote their reports, the pleadings have changed, dropping two of the patents from the infringement claims. Envirotech protests as an unfair surprise the inclusion in the Everett "clarification" report of allegations that previously unasserted claims of the two remaining patents-in-suit are infringed. Envirotech does not take into account the fact that in two reports, its expert, Butler, did not address the infringement allegations, including the infringement allegations directed to the independent claims. Instead, Butler focused on invalidity. After the reports issued, the law changed with respect to the invalidity analysis. Finally, the reports do not take the results of recent discovery into account. Given these problems and the difficulties this case has experienced

from the outset, this court will not consider the expert reports as summary-judgment evidence until they have been properly verified and preferably revised to take into account the developments in this case and in the applicable law.

Seitz also objected to the deposition testimony of Gregg Johnson, an Envirotech officer. (Docket Entry 110, Ex. 11). Seitz argues that Johnson lacks expertise in engineering and cannot testify to events that occurred before he started working at Envirotech. (Docket Entry No. 121 at 2). Envirotech responds that Johnson is qualified to testify about technical issues relating to water heaters and, as a Rule 30(b)(6) witness, to testify about information learned from Envirotech's records and other sources. (Docket Entry No. 128 at 5).

Federal Rule of Evidence 702 "charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)); FED. R. EVID. 702 Committee Note. Expert testimony must be both "relevant and reliable" to be admissible. *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003) (quoting *Pipitone*, 288 F.3d at 243–44); *Daubert*, 509 U.S. at 589. Witnesses may be qualified as experts if they possess specialized knowledge, skill, experience, training, or education. FED. R. EVID. 702.

The record leads this court to conclude that Johnson is not qualified by education or experience to give expert testimony about the technology at issue. However, Johnson may testify both from personal knowledge and as a Rule 30(b)(6) witness about Envirotech's

10

records, including advertisements and marketing materials, and how it has conducted its business.

## II.    Envirotech's Motion for Summary Judgment as to Noninfringement and Invalidity

### A.    The Legal Standards

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Lincoln General Ins. Co. v. Reyna*, 401 F.3d (5th Cir. 2005) (citing  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  "An issue is material if its resolution could affect the outcome of the action."  *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the

nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Young v. Exxonmobil Corp.*, 155 Fed. Appx. 798, 800 (5th Cir. 2005).

### B.    The Motion for Summary Judgment as to Infringement

Patent infringement claims involve two analytic steps. *Mars, Inc. v. H.J. Heinz Co., L.P.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004); *Scanner Tech. Corp. v. ICOS Vision Sys. Corp., N.V.*, 365 F.3d 1299, 1302 (Fed. Cir. 2004). First, the court determines the meaning and scope of the asserted claims. *Scanner Tech.*, 365 F.3d at 1302; *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004). Claim construction is a matter of law. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). Second, the claims as construed are compared to the allegedly infringing device to determine whether the claims encompass the accused structure. Whether the accused device contains each element, as properly construed, is a question of fact. *Bai*, 160 F.3d at 1353. Literal infringement of a claim requires that every limitation recited in the claim appears in the accused device, "i.e.,

that the properly construed claim reads on the accused device exactly." *Cortland Line Co., Inc. v. Orvis Co., Inc.*, 203 F.3d 1351, 1358 (Fed. Cir. 2000). If even one limitation is missing or not met as claimed, there is no literal infringement. *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir. 2003); *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). Summary judgment on the issue of literal infringement is proper "when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Goldenberg v. Cytogen, Inc.,* 373 F.3d 1158, 1164 (Fed. Cir. 2004) (quoting *Bai*, 160 F.3d at 1353).

> ### 1.   Envirotech's Motion for Summary Judgment that its ESI-2000 and Fortis Do Not Infringe the '743 and '831 Patents

Before Seitz filed the amended complaint deleting the infringement claims as to the '743 and '831 Patents, Envirotech counterclaimed for a declaratory judgment as to noninfringement and moved for summary judgment that those patents were not infringed. (Docket Entry No. 109). Seitz asked this court not to grant the summary judgment motion because discovery might reveal evidence to support infringement. (Docket Entry No. 121 at 2). Seitz later filed an amended complaint removing the claims related to those patents. (Docket Entry No. 136).

When an alleged infringer seeks declaratory judgment on noninfringement, the patentee bears the burden of proof on infringement. *Advance Transformer Co. v. Levinson*, 837 F.2d 1081, 1084 (Fed. Cir. 1988) (trial court did not err in finding that patent

owner-defendant in declaratory judgment action had not met his burden to prove infringement); *Under Sea Indust., Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987) ("The burden is always on the patentee to show infringement"); *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp.2d 762, 769 (D. Md. 2003) ("[I]n a typical patent infringement declaratory judgment case where the declaratory plaintiff seeks a holding of non-infringement, the patent holder retains the burden of proof despite being the nominal defendant."). Seitz had not identified evidence supporting the allegation that the Envirotech devices infringe the '743 and '831 Patents. In two reports, Seitz's expert, Everett, acknowledged that the materials he had reviewed provided no basis to find infringement of the '743 and '831 Patents. The record shows no evidence supporting a claim of infringement related to the '743 and '831 Patents. Seitz did not move for a continuance under Rule 56(f), perhaps recognizing that there was no available evidence to be discovered.

In its original answer to Seitz's complaint, Envirotech filed a counterclaim seeking a declaratory judgment that Envirotech had not infringed the '743 and '831 Patents. (Docket Entry No. 6 at ¶¶ 29–30). In its answer to the amended complaint, however, Envirotech did not counterclaim for a declaratory judgment that Envirotech did not infringe the '743 and '831 Patents. (Docket Entry No. 140). Because the answer superseded the earlier pleading, there is no longer a counterclaim for a declaratory judgment of noninfringement of the '743 and '831 Patents. Envirotech is given leave to amend its answer to the amended complaint solely to reassert its counterclaim for a declaratory judgment on noninfringement of the '743 and

14

'831 Patents.  Envirotech may then move for summary judgment as to noninfringement of those patents.

> 2.  *Envirotech's Motion for Summary Judgment of Noninfringement as to Certain Claims (and Motion to Exclude the Same Claims as Unasserted Claims) of the '880 and '971 Patents*

Envirotech asserts that Seitz has not produced evidence that the dependent claims of the '880 and '971 Patents were infringed.  (Docket Entry No. 110 at 7).  Those claims are claims 2–9 and 11–20 of the '880 Patent and claims 2–9, 11–15, and 17 of the '971 Patent.  (*Id*.).  Envirotech relies on the absence of a reference to these dependent (and independent) claims in the initial expert report Everett submitted.  (*Id*.).  In a related motion, Envirotech moves to exclude allegations of infringement based on these initially unasserted claims, which were raised in Everett's "clarification" report submitted in November 2006.

Everett's "clarification" report came after this court's deadline for expert reports and at the end of the discovery deadline.  Nonetheless, in the unusual circumstances of this case, allowing Seitz to include in the expert report the additional infringement claims does not unfairly prejudice Envirotech.  Seitz had timely provided Envirotech notice of the basis for claiming infringement of the independent claims of the '971 and '880 Patents.  Envirotech's response was to file an expert report and a rebuttal report that focused on invalidity, not infringement.  As noted, the Supreme Court has recently addressed and changed  the legal standards that apply to invalidity challenges.

Given the history of this case, the fact that significant discovery has taken place since the motion was filed, the deficiencies in the summary-judgment evidence, and the problems

15

in the briefing resulting in part from the recent change in the law, this court denies Envirotech's motion to exclude Seitz's infringement claims based on claims 2–9, and 11–20 of the '880 Patent and claims 2–9, 11–15, and 17 of the '971 Patent and denies Envirotech's motion for summary judgment of noninfringement as to these claims.  Both sides will be given a deadline within which to have their expert reports updated to reflect recent developments in the facts and law relevant to this case.  This will enable Envirotech to respond to the assertions of infringement of previously unasserted claims included in Everett's "clarification" report, removing any potential for unfairness.

### 3.     Envirotech's Motion for Summary Judgment as to Invalidity

Envirotech's primary argument is that the '880, '971, and '831 Patents are invalid in light of prior art.   Section 103 of the Patent Act forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  The Supreme Court recently summarized the long-standing approach to such claims:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR International Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1734 (2007) (internal quotations omitted). The Supreme Court reviewed the Federal Circuit's approach under the so-called TSM (teaching, suggestion, or motivation) test and held that this approach was "contrary to § 103 and to our precedents" because it had become a "rigid rule that limits the obviousness inquiry." *Id.* The Court gave the following guidance when the question is "whether a patent claiming the combination of elements of prior art is obvious":

> When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill. . . . [A] court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions.
>
> Following these principles may be more difficult in other cases than it is here because the claimed subject matter may involve more than the simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement. Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue. To facilitate review, this analysis should be made explicit. . . .As our precedents make clear, however, the analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ.

17

*Id.* at 1740–41.  One court has characterized this decision as "generally lower[ing] the bar for alleged infringers attempting to establish obviousness."  *Tech. Licensing Corp. v. Gennum Corp.*, 2007 WL 1319528, at *18, n.38 (N.D. Cal. May 4, 2007).

The parties have not had the opportunity to brief the impact of *KSR* on the validity issues in this case.  In addition, the briefs provide this court little assistance in analyzing the expert opinions on validity.  The briefs do not include a detailed comparison of the specific teachings of the asserted prior art to the specific claims of the patents-in-suit.  The present record does not permit an adequate analysis of the invalidity issue.

Envirotech's motion for summary judgment on noninfringement and invalidity is denied, without prejudice.  It may be reasserted based on a proper record and a significantly more detailed analysis of the relevant facts, the expert opinions (presented in admissible form), and the current legal standards.

## IV.   Envirotech's Motion for Summary Judgment as to the Lanham Act Claims

Seitz's original complaint alleged that Envirotech's advertising and marketing materials "wrongfully stated it is the only manufacturer in compliance with government regulations, that it manufactures the only tankless water heaters that allows [sic] use of two or more outlets at one time and temperature, and that its products were developed in cooperation with DuPont.  These statements are false."  (Docket Entry No. 1 at ¶ 21).  This allegation is repeated verbatim in the amended complaint.  (Docket Entry No. 136 at ¶ 23).  Seitz alleges that Envirotech violated the Lanham Act, 15 U.S.C. § 1125.

18

The statute states:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). Seitz seeks an injunction against false advertising and seeks damages in the amount of Envirotech's profits and Seitz's actual damages. (Docket Entry No. 136 at 7–8). Envirotech moved for summary judgment on the basis that Seitz lacks standing; the undisputed evidence shows that the statements are not false; and Seitz suffered no damages. (Docket Entry No. 109).

### A.    Standing

To analyze standing under the Lanham Act, a court examines: "(1) the nature of the plaintiff's alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws?; (2) the directness or indirectness of the asserted injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or

complexity in apportioning damages." *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 460 (5th Cir. 2001).  In *Logan*, the plaintiff, the owner of a patent for a method of slicing meat, had standing to assert a Lanham Act claim based on a competitor's advertisements about meat sliced using that method.  The *Logan* court found that the plaintiff had a "direct business interest in the sales of spiral sliced meats" and that "his ability to license his spiral slicing method to others may have been directly affected by HoneyBaked's false advertising offering spiral sliced products." *Id.* at 461.  The plaintiff had standing even though the jury found that he had not shown any actual losses from the advertising. *Id.*  Under *Logan*, Seitz appears to have standing to assert a Lanham Act claim.

### B.   False Adverting

Envirotech also argues that the summary-judgment evidence shows that Seitz cannot raise a fact issue as to the elements of a Lanham Act violation.  "A plaintiff must make the following showing to establish a claim under the false advertising prong of the Lanham Act: (1) that the defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff[ ] ha[s] been or [is] likely to be injured as a result." *Logan*, 263 F.3d at 462. "[W]hen the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers. . . . In such a circumstance, the court will assume that the statements actually misled consumers." *Id.*

20

(citing *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000)); *see also Rorie v. Edwards*, 48 Fed. Appx. 102, at *4 (5th Cir. 2002).   A statement is not false if it is "'puffery,' an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." *Pizza Hut*, 227 F.3d at 496–97.

A plaintiff seeking monetary damages for false or misleading advertising that is not literally false must prove actual deception. *Pizza Hut*, 227 F.3d at 497.   For injunctive relief, a plaintiff must show that the statements are either literally false or likely to mislead and confuse consumers and that irreparable harm will result without an injunction. *Logan*, 263 F.3d at 465.   Even for a literally false statement, the plaintiff must present evidence that it was harmed by the false statements. *IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 376 (5th Cir. 2002) ("Even if the district court erred in finding that [the plaintiff] failed to present a genuine issue of material fact on the literal falsity of the defendants' statement that Fix-A-Flat was "non-explosive," which we do not decide, [the plaintiff] failed to produce competent summary judgment evidence that it was harmed by the defendants' allegedly false and misleading advertisement.").

In its summary-judgment motion, Envirotech argued that the allegations of false advertising in the complaint and amended complaint did not accurately describe the advertising.   (Docket Entry No. 121 at 10).   Envirotech submitted excerpts from Gregg Johnson's deposition about the advertising.   (Docket Entry No. 110, Ex. 11).   Seitz submitted

21

an affidavit by David Seitz stating that he saw eight false statements on Envirotech's website. (Docket Entry No. 121, Ex. A).  Those statements are:

- DuPont helped Envirotech design the heating chambers.

- The ESI 2000 allows for precise setting of the output water, REGARDLESS OF FLOW.

- The ESI 2000 will provide "5gpm" of hot water in the coldest climate.

- The ESI 2000 will "make hot water instantly available as soon as any or all the faucets on the line are turned on."

- The ESI 2000 is the only tankless water heater to comply with the recent, more stringent Underwriters Laboratory, Inc. (U.L.) Standards.

- The ESI 2000 is the only tankless water heater that meets the newest, stringent UL standards that require strict compliance with the National Electric Code (NEC).

- Envirotech "achieved UL listing and in so doing changed their standard . . . this gives us an additional leg up . . . making the ESI 2000 the only electric tankless water heater that complies with the new standard" and that the ESI 2000 is "the only TANKLESS WATER HEATER in the world that offers precise automatic temperature control."

(*Id.* at 1–2).  Seitz also submitted marketing material that Envirotech produced during discovery.  (*Id.*, Ex. A-1).  Seitz argues that this material "substantiates Mr. Seitz's

recollection of the website content." (*Id*. at 7).  The marketing material contains the following statements:

- [The ESI-2000] is the first electronic tankless water heater that offers continual immediate availability of precise set temperature, no matter how many faucets are turned on.

- [The ESI-2000 provides] immediate availability of a precise set temperature of water, no matter how many faucets are turned on.

- [T]he ESI 2000 is the only electronic tankless water heater on the market to meet the newest, more stringent Underwriters Laboratory Inc. (UL) standard that require strict compliance with the National Electrical Code (NEC).

- The ESI 2000 is Listed [sic] to applicable UL standards and requirements by Underwriters Laboratories and is the only tankless water heater that meets the newest, stringent UL standards that require strict compliance with the National Electrical Code (NEC).

- Recently we [Envirotech] achieved UL listing and in doing so changed their standard. . . . This added safety feature gives us a leg up on all our competition, making the ESI 2000 the only electric tankless water heater that complies with the new standard.

- [ESI-2000 is] the only TANKLESS WATER HEATER in the world that offers precise automatic temperature control that allows you to heat only the water you use.

23

- A chart shows that some versions of the ESI-2000 can provide 5 gpm of flow per minute in a "cold climate."

(*Id.*, Ex. 2).

The first statement Seitz challenges is that DuPont "helped design" the water heater chambers.  In a discovery response, Envirotech stated that "no publicly held company participated in the development of the Envirotech water heater."  (Docket Entry No. 121, Ex. A, Attachment 1, Request No. 3).   But Johnson also testified that DuPont was "involved" in the plastic components of the heater.  (Docket Entry No. 110, Ex. 11 at 87).  Johnson testified that it would not be a truthful statement to claim that "[DuPont] designed the ESI 2000," (*id.*), but that is not the representation that Seitz stated that he saw.  There is no reference to DuPont in the Envirotech advertising materials Seitz submitted as summary-judgment evidence.  This scant record does not raise a disputed issue as to whether the alleged statement about DuPont's involvement in the ESI-2000 water heater was literally false.

The second group of challenged statements concerns compliance with a certain U.L. standard.  David Seitz stated in his affidavit that Envirotech was not the only company to meet the U.L. standard.  (Docket Entry No. 121, Ex. A at 2).  David Seitz stated that there were no "new U.L. standards . . . [i]t was a total fabrication."  (*Id.* at 3).  Johnson testified that he believed Envirotech was, at the time the marketing materials were made, the only company to have met the U.L. 499 standard.  (Docket Entry No. 110, Ex. 11 at 85).  David Seitz neither provides nor identifies evidence as to when his company met this U.L. standard or what the "newest" standard was.

The third set of statements is about the capacities of the ESI-2000.  The record as to these statements does not raise a disputed issue as to literal falsity.  When asked about statements that the ESI-2000 water heater maintained a precise temperature, Johnson responded that Envirotech studies showed the ESI-2000 provided water with "very little fluctuation" in temperature.  (Docket Entry No. 110, Ex. 11 at 73).  Johnson testified that the units could not "overcome the laws of physics.  If you draw more than the unit is capable of putting energy into the water, it won't be capable of generating heat."  (*Id.*).  When asked whether the heater would maintain precise temperature with 500 faucets running, Johnson responded that one unit could not but enough units running in parallel could.  (*Id.* at 76).  The record does not raise a disputed issue as to whether the statements about the capacities of the ESI 2000 are literally false.

When the evidence creates a genuine issue of fact, the question whether a statement is literally false is a question of fact.  *O'Grady v. Twentieth Century Fox Film Corp.*, 2003 WL 24174616, at *15 (E.D. Tex., Dec. 19, 2003).  Based on the present record, the evidence as to the statements Seitz identifies as the basis for the Lanham Act claim does not raise a fact issue as to literal falsity, as opposed to vague or general claims of superiority or "puffery."  Even assuming a fact issue as to falsity, however, summary judgment is proper.  Seitz has not shown any evidence of damages or harm from the allegedly false statements.  (Docket Entry No. 110 at 13).

Seitz did not directly respond to the argument that he had failed to present evidence of injury.  Instead, Seitz stated that it is not necessary to show customer confusion when

misrepresentations are deliberate and willful.  (Docket Entry No. 121 at 8).  The cases make clear, however, that even if customer confusion need not be proven, damages or other harm must be.

In his deposition, David Seitz testified that he could not identify any evidence that the Envirotech advertising induced customers to buy an Envirotech product:

> Q [Counsel for Envirotech]: What is your evidence that supports that belief that people would have bought a Seisco unit as opposed to a Control unit or one of the other manufacturers out there in the industry?
>
> A [Seitz]: And – and I told you that I don't believe that in this case I need to demonstrate to this Court anything in the way of evidence more than this was fraudulent, this was deliberate and this was intentional and it went way beyond just, you know, rosy advertising.

(Docket Entry No. 110, Ex. 15 at 187–88).  David Seitz stated that he could not identify a customer who bought an Envirotech product because of the challenged advertising.  "I cannot sit here today and give you a single name of a single person who told us they bought Envirotech based on their representations." (*Id*. at 192).  Seitz has not identified evidence that Envirotech profited or that Seitz lost sales or was harmed as the result of the false statements.

In *Logan*, this circuit applied its previous rule from *Texas Pig Stands, Inc. v. Hard Rock Café International, Inc.*, 966 F.2d 956 (5th Cir.1992) (per curiam) ("*Texas Pig Stands II*"), a trademark infringement case, in which the court held that the plaintiff was "not entitled to profits demonstrably not attributable to the unlawful use of his mark."  *Id.* at 957–58.  In *Logan*, the court applied the *Texas Pig Stands II* rule in finding that the plaintiff patent owner

could not recover profits under a Lanham Act false advertising claim because he "failed to present any evidence that HoneyBaked's profits were attributable to false advertising. Indeed, on appeal, Logan has not pointed to any evidence in the record demonstrating that consumers purchased HoneyBaked's product because of its false advertising that the meat was spirally sliced." 263 F.3d at 465.  In this case, as in *Logan*, there is no evidence that Envirotech's profits were the result of the allegedly false advertising.  Nor has Seitz presented or identified evidence as to other damages he suffered as a result of the false advertising alleged.

To obtain injunctive relief, Seitz must show that the statements are "either literally false or that the advertisement is likely to mislead and confuse consumers and that it will suffer irreparable harm if the injunction is not granted."  *Logan*, 263 F.3d at 465.  Even assuming a fact issue as to whether Envirotech's advertising was literally false, Seitz has not identified or presented any evidence of irreparable harm.  The record does not show that after December 2005, Envirotech advertised or sold the ESI-2000.

Envirotech's motion for summary judgment as to the Lanham Act claims is granted.

## VI.    Conclusion

Envirotech's motion for summary judgment as to the Lanham Act claims is granted. Envirotech's motion for summary judgment as to noninfringement of the '743 and '831 Patents is denied but may be reurged after an amended answer is filed.  Envirotech's motion for summary judgment for noninfringement of certain claims of the '971 and '880 Patents and Envirotech's motion to exclude unasserted claims of infringement as to those patents are denied.  Envirotech's motion for summary judgment as to the invalidity of the '971 and '880

Patents, the only patents that are currently in suit, is also denied.  Envirotech may reassert the motions for noninfringement or invalidity of the '971 and '880 Patents after the following occur:

1.  Envirotech may amend its answer to Seitz's amended complaint to include a counterclaim for declaratory judgment as to noninfringement of the '743 and '831 Patents and file a related summary judgment motion.  The amended answer and motion must be filed by July 13, 2007.

2.  Envirotech's expert may respond to the "clarification" report Everett submitted. This will provide Envirotech an opportunity to meet the opinions Everett added in that report about infringement of the previously unasserted claims and to make sure the invalidity challenge is framed correctly in light of the recent change in the legal standard and recent discovery.  This response must be served on opposing counsel no later than July 13, 2007.

3.  Seitz's expert  may reply to this expert report.  This must be served on opposing counsel no later than August 10, 2007.

4.  Envirotech may file a dispositive motion on infringement or invalidity no later than September 10, 2007.  Seitz must reply no later than September 30, 2007.  The supporting briefs must be specific, detailed, and explain the effect of the recent Supreme Court case on invalidity.

SIGNED on June 19, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge